

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**06 CV 3841**

------------------------------------------------------ x
                                          :   No. 06 Civ. _____
CREDIT SUISSE SECURITIES (USA) LLC,       :
                            Petitioner,   :
                                          :
        -against-                         :   **PETITION FOR INJUNCTIVE RELIEF**
                                          :   **PENDING ARBITRATION**
GUY S. WALTMAN,                           :
                            Respondent.   :
                                          :
                                          :
------------------------------------------------------ x

Petitioner Credit Suisse Securities (USA) LLC ("Credit Suisse"), by its attorneys,

Quinn Emanuel Urquhart Oliver & Hedges, LLP, petitions this Court for a temporary restraining

order and a preliminary injunction pending arbitration compelling Respondent Guy S. Waltman

("Respondent") to: (1) honor contractual commitments obligating him to provide 90 days' notice

prior to terminating his employment with Credit Suisse, and to refrain from soliciting any of

Credit Suisse's clients or employees for 60 days after his Credit Suisse employment ends; (2)

return Credit Suisse's confidential and trade secret information, including any electronic

information that he stole from Credit Suisse.

## FACTUAL ALLEGATIONS

### The Parties

1.      Petitioner Credit Suisse is, and at all relevant times has been, one of the

world's leading financial institutions and a limited liability corporation duly organized and

existing under the laws of the State of Delaware, with its principal place of business at 11

Madison Avenue, New York, New York. Credit Suisse's sole member is Credit Suisse First

Boston (USA), Inc. Credit Suisse First Boston (USA), Inc. is a corporation duly organized and

existing under the laws of the State of Delaware, with its principle place of business is at 11

Madison Avenue, New York, New York. Credit Suisse is engaged in the business of selling investment products and providing financial services to its clients.

      2.    Upon information and belief, Respondent is a resident and citizen of the State of Pennsylvania. Respondent was employed as a Managing Director in the New York office of Credit Suisse's Private Banking USA Group ("Private Banking") as of May 19, 2006.

**Jurisdiction and Venue**

      3.    This Court has jurisdiction under 28 U.S.C. § 1332 inasmuch as the matter in controversy is between citizens of different states and exceeds the sum or value of $75,000.

      4.    Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(a) inasmuch as a substantial part of the events or omissions giving rise to the claims herein occurred in this district. Moreover, as set forth more fully below, the parties' arbitration agreement calls for arbitration to be held in the New York City metropolitan area.

**Facts**

      5.    Mr. Waltman is a Managing Director at Credit Suisse, working as a broker for high net worth clients. He was highly compensated by Credit Suisse.

      6.    Mr. Waltman provided notice of his intent to resign on May 19, 2006, purporting to make his resignation effective immediately. He also indicated that he will not abide by the 90-day notice and 60-day non-solicit provisions that he agreed to. He also indicated that he intends to begin violating his commitments to Credit Suisse as of 2 p.m. today.

      7.    His former sales assistant, Christina Rice, also resigned today, indicating that Mr. Waltman offered her certain incentives to leave Credit Suisse to go to Mr. Waltman's new employer, UBS, a direct competitor of Credit Suisse. It is thus clear that Mr. Waltman solicited Ms. Rice, in violation of the non-solicitation of employees provision. On information

and belief, Mr. Waltman also solicited at least one other Credit Suisse employee on several occasions prior to May 19, 2006.

8.    Worse, Mr. Waltman, on information and belief, e-mailed to a private e-mail account, several documents containing Credit Suisse's confidential and trade secret protected information.

9.    Credit Suisse is today commencing mediation and arbitration against Mr. Waltman, asserting claims for breach of contract, breach of fiduciary duty, and misappropriation of trade secrets.

10.    Credit Suisse seeks a preliminary injunction and a temporary restraining order to prevent Mr. Waltman from violating his obligations to Credit Suisse, so that the arbitration it has commenced against him will not be rendered a nullity.

11.    If Mr. Waltman is not enjoined, Credit Suisse will be irreparably harmed by the loss of its confidential and trade secret information, and based on the solicitation of its clients and employees.

**Prayer for Relief**

12.    The parties' agreement to arbitrate Employment-Related Claims pursuant to the procedures set forth in the Credit Suisse's EDRP, which Mr. Waltman agreed to adhere to (a copy is attached) is enforceable by this Court pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, et seq., which authorizes this Court to enter an Order directing that arbitration proceed in the manner provided for in the arbitration agreement.  See 9 U.S.C. § 4.

13.    Ancillary to its power under the Federal Arbitration Act to compel arbitration, this Court is empowered to issue preliminary injunctive relief to preserve the meaningfulness of arbitration by preventing a party from irreversibly altering the status quo.

14.    This Court is further authorized to grant such injunctive relief pending arbitration pursuant to 28 U.S.C. § 1651, in aid of its jurisdiction.

WHEREFORE, Credit Suisse prays that an injunction be entered:

A.    restraining and enjoining Respondent from employment with any entity other than Credit Suisse until his resignation becomes effective in 90 days from May 19, 2006;

B.    restraining and enjoining Respondent, and all those acting in concert with him, from engaging in "Solicitation," as defined by the US Employees Handbook (attached hereto) for 150 days from May 19, 2006;

C.    compelling Respondent and all those acting in concert with him, to return immediately to Credit Suisse all of Credit Suisse's confidential information and trade secrets, including, but not limited to, all information regarding Credit Suisse customers and accounts, and market research that Respondent stole from Credit Suisse; and

D.    granting such other and further relief as may be just and proper.


Dated: New York, New York
       May 19, 2006

QUINN EMANUEL URQUHART OLIVER
& HEDGES, LLP

By: *Alexander Barnard*

Kevin S. Reed (KR-5386)
Alexander C.B. Barnard (AB-3181)
William B. Adams (WA-0621)

51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

Attorneys for Credit Suisse Securities
 (USA) LLC

# Exhibit A

## The 2005 Annual Certification - English

| | |
|---|---|
| **Catalog ID:** | CSF906-d50en |
| **Name:** | Guy S. Waltman |
| **User ID:** | 76KK |
| **Submission Date:** | Oct 14, 2005 06:42 Pacific Time |



The certification's start page, introduction, and questions appear below, along with the answers provided by **Guy S. Waltman.** These items are presented as they appeared at the time the certification was submitted.

The Certification requires you, among other things, to acknowledge that you have read and understand the **Global Business Conduct Manual** and the Firm's employment-related rules and policies applicable to your location, and to agree to conduct yourself and your business accordingly. The various manuals, policies, programs and other documents referenced in this Certification form can be accessed by clicking the appropriate links. **Click "Get Started" to complete the one-page certification form.**

**Please read and certify to each of the three items below.** You must personally complete the Certification form. No one may authorize another person to complete the form on his or her behalf, and no one may complete the form on behalf of someone else. Then click the "Submit" button.

**1.** I have read the Firm's Global Business Conduct Manual and applicable compliance manuals and policies, and I agree to abide by them as well as any applicable regulatory standards (for the manuals and related documents that apply see the Code of Conduct InfoCenter). In particular, I have read and agree to abide by the Firm's policies and procedures on confidential and/or inside information and information barriers, and I am aware of the duties governing receipt of confidential and inside information and of the sanctions resulting from the misuse or improper distribution of such information.

☑ I certify.

**2.** Nothing has come to my attention during the certification period that leads me to believe that any of my activities, or the activities of any other CSFB employee, violated Firm policies or any applicable legal, regulatory or ethical standards. This certification does not include any issues that I know have already been brought to the attention of my supervisor and/or LCD. I agree to promptly report to my supervisor or LCD (or, when appropriate, the Integrity Hotline) any conduct of which I become aware that may violate Firm policies or legal, regulatory or ethical standards.

☑ I certify.

**3.** I have read the Firm's employment-related rules and policies applicable to my location and I understand and agree to abide by them. These include, without limitation, all rules and policies relating to equal employment opportunity and prohibiting discriminatory practices, and the provisions of any applicable employment dispute resolution program and/or rules relating to notice of resignation and non-solicitation (see CSFB's Human Resources policies and handbooks).

☑ I certify.

LRN Privacy Statement                                 Copyright © 1999-2006 by LRN, The Legal Knowledge Company. All rights reserved.

Confidential and Proprietary          LRN Certification ID: 3254, LRN Completion ID: 295809, printed on: Apr 27, 2006 14:28 Pacific Time



**CREDIT SUISSE FIRST BOSTON**

**EMPLOYMENT DISPUTE RESOLUTION PROGRAM (UNITED STATES)**
**(as amended as of October 9, 2002)**

**The Program**

The Credit Suisse First Boston Employment Dispute Resolution Program (the "Program") is a three-step program of dispute resolution procedures. It is designed to provide employees located in the United States with an opportunity to resolve employment-related claims in a speedy, cost-effective, and confidential manner.

The three steps of the Program are an internal grievance procedure; mediation with a neutral third party; and final and binding arbitration before a neutral third party. These procedures are, and since January 1, 1998, have been, the only means by which Credit Suisse First Boston employees located in the United States are able to seek resolution of employment-related claims of the type covered by the Program. They may not sue in court as to these claims.

Credit Suisse First Boston is also required to bring any claims it may have against employees located in the U.S. under the Program if the claims are of the type covered by the Program.

As used herein, "Credit Suisse First Boston" means the Credit Suisse First Boston Business Unit, including each of its past, present, and future legal entities, and its and their past, present and future directors, officers, and employees, in both their personal and their institutional capacities, and "employee" refers to both former employees and current employees and to applicants for employment.

**The Types of Claims That Are Covered**

All present and future claims against Credit Suisse First Boston by an employee, and all present and future claims against an employee by Credit Suisse First Boston, are covered by the Program if: (i) they relate to or arise from the employee's application for employment, employment, or termination (including manner of termination) of employment, or from events occurring after termination but relating to one of the foregoing, and (ii) they assert the violation or infringement of a legally protected right. Claims covered by the Program include, without limitation:

- All employment-related claims under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Age Discrimination in Employment Act, the Equal Pay Act, the Americans with Disabilities Act, the Employee Retirement Income Security Act, the Fair Labor Standards Act, the Rehabilitation Act of 1973, the Family and Medical Leave Act, the Workers Adjustment and Retraining Notification Act, or any other federal, state, or local statute, ordinance, regulation, or common law rule or decision regarding employment discrimination, civil rights, human rights, whistleblower/public policy protection, conditions of employment, or termination (including manner or notice of termination) of employment, as the foregoing may from time to time be amended.

1

State and local laws that are covered by the foregoing references include, without limitation, the laws of

New York, California, Illinois, Texas, Florida, Georgia, Massachusetts, Maryland, New Jersey, Pennsylvania, and Washington, D.C. and any other state or any locality where Credit Suisse First Boston has, had, or may at any time have an office; and

- All claims of breach of a contract entered into or alleged to have been entered into in connection with an employee's employment, all claims asserted under the Credit Suisse Group International Share Plan or any other equity or deferred compensation plan or any employee investment plan, and all employment-related claims for indemnification.

The only types of employment-related claims that are not covered by the Program are:

- Claims arising under the National Labor Relations Act, claims for workers' compensation, and claims for unemployment benefits. These will continue to be handled in accordance with applicable law.

- Claims for injunctive relief, including, without limitation, claims for injunctive relief brought in connection with allegations of unfair competition or the improper use of trade secrets or confidential or proprietary information, and claims to enforce the terms of an agreement or covenant relating to non-competition, non-solicitation, nondisclosure, or confidentiality, whether brought by an employee or by Credit Suisse First Boston. Employees and Credit Suisse First Boston will be able to assert such claims for injunctive relief in court to the extent necessary to determine whether such relief should be granted. No judicial proceeding initiated by a party in respect of an employment-related dispute in accordance with this paragraph shall be deemed a waiver of or incompatible with such party's right and obligation to seek final resolution of the subject matter of such dispute pursuant to the mediation and arbitration provisions of the Program.

Claims of the type covered by the Program, as described above, are hereafter referred to as "Employment-Related Claims."

## Other Important Information

- Credit Suisse First Boston personnel are specifically prohibited from taking any retaliatory action against an employee who has sought to use the Program. Violations of this rule will be treated with the utmost seriousness. Any employee who believes that he or she has been retaliated against for using the Program should immediately notify the Human Resources Department or the Legal and Compliance Department.

- Adoption of the Program and an employee's use of the Program will not affect an employee's status as an at-will employee, and will not limit Credit Suisse First Boston's ability to take disciplinary or other personnel action against the employee. If an employee believes he or she has an Employment-Related Claim against Credit Suisse First Boston as a result of its taking any such action, the employee may institute proceedings under the Program, but may not sue in court.

- Credit Suisse First Boston reserves the right to amend or repeal the Program at any time, upon notice. No such amendment or repeal will affect the applicability of the Program to Employment-Related Claims that arose before the effective date of the amendment or repeal.

- Establishment of the Program does not affect an employee's right to pursue, in accordance with applicable law, any administrative agency process that may be available to the employee.

- An employee who is (or is required to be) a registered representative shall be subject to the arbitration provisions of the Program with regard to an Employment-Related Claim asserted by him or her except to the extent he or she is legally required to arbitrate such Employment-Related Claim pursuant to particular rules or in a particular forum (for example, pursuant to the rules of or at a stock exchange or the National Association of Securities Dealers) to the exclusion of all other rules and forums. If such a requirement applies, it will take precedence over the arbitration procedure described in Step Three of the Program. Registered representatives will in all events be subject to the Program requirements regarding the internal grievance procedure (Step One) and mediation (Step Two), including the requirement that they seek resolution of Employment-Related Claims pursuant to those procedures, in accordance with the Program, before proceeding to arbitration. An employee who is not (and is not required to be) a registered representative shall be subject to all provisions of the Program with regard to an Employment-Related Claim asserted by him or her, including the requirements that an arbitrator be selected, and the arbitration of an Employment-Related Claim be conducted, through the auspices of and in accordance with the rules and procedures of identified service providers. Such an employee shall not be permitted to use any other forum, including that of a stock exchange or the National Association of Securities Dealers, for the arbitration of an Employment-Related Claim.

- If any provision of the Program is for any reason found by any court to be invalid or unenforceable, such judgment shall not affect, impair, or invalidate the remaining provisions of the Program, but shall be confined and limited to the provision of the Program directly involved in the controversy in which such judgment was rendered.

- Credit Suisse First Boston is committed to the principles of alternative dispute resolution set forth in the Program and to the early resolution of employment disputes. In individual circumstances, it may deviate from the Program's provisions and procedures in order to promote these principles and benefit employees. Credit Suisse First Boston's doing so shall not constitute or be construed as a waiver by Credit Suisse First Boston of its right to require adherence to the Program's provisions or of the enforceability of the Program.

## The Three Steps

Step One of the Program is the internal grievance procedure. Step Two is mediation before a neutral third party. Step Three is final and binding arbitration before a neutral third party. The three steps must be taken in sequence. The procedures an employee must follow to initiate each of the three steps and the manner in which proceedings pursuant to each step are be conducted are explained below.

### *Step One - Internal Grievance Procedure*

If an employee believes he or she may have an Employment-Related Claim against Credit Suisse First Boston, the employee should first, and as promptly as possible, bring the problem to the attention of an appropriate person at Credit Suisse First Boston. Generally

an employee's supervisor will be in the best position to understand and resolve a problem because he or she is most likely to be familiar with the employee's working situation and to know the other personnel in the employee's department. The first person an employee speaks to should therefore usually be his or her supervisor. If an employee does not feel comfortable speaking to his or her supervisor (because, for example, he or she believes the supervisor is part of the problem), he or she should take the issue to the supervisor's supervisor or to another appropriate person above the supervisor in the department's chain of command. Instead of directly approaching a supervisor, an employee may also, at any point in the process, contact his or her Human Resources representative to discuss the issue. Supervisors with whom issues are raised should contact their Human Resources representatives for assistance in resolving such issues.

If Credit Suisse First Boston believes it has an Employment-Related Claim against an employee, it will bring the issue to the attention of the employee and seek to resolve the claim through discussions with the employee or his or her representative before proceeding to Step Two of the Program.

As a matter of Credit Suisse First Boston policy, all employment-related issues that are raised in connection with the foregoing dispute resolution procedure are to be handled confidentially to the extent reasonably practicable under the circumstances. Often the matter can be dealt with by a supervisor without his or her bringing anyone else (other than, in appropriate cases, a member of the Human Resources Department) into the discussions. At other times it may be necessary that another manager or other employees be consulted in order to resolve the matter. All supervisors, managers, and other employees are specifically prohibited from taking any retaliatory action against an employee who has raised an Employment-Related Claim and sought to utilize the foregoing procedure or any of the other dispute resolution procedures set out in the Program. Step One of the Program may be used not only in connection with Employment-Related Claims but also in connection with any other employment-related grievances an employee may have.

### *Step Two - External Mediation*

If an employee or Credit Suisse First Boston raised an Employment-Related Claim through the Step One internal grievance procedure and believes the dispute was not satisfactorily resolved through that procedure, he or she or it may elect to proceed to Step Two. Step Two consists of the mediation of an Employment-Related Claim by a neutral third party. To elect to proceed to mediation, an employee or Credit Suisse First Boston must make a request for mediation in the manner described below. Each may also request mediation of an Employment-Related Claim asserted by the other. An employee or Credit Suisse First Boston may request mediation only in respect of an "Employment Related Claim," as that term is defined above.

### What Mediation Is

In mediation, the parties (and, if they so choose, their attorneys) meet in a confidential setting with a neutral third party, the mediator. The mediator encourages the parties to discuss their differences and assists them in developing a resolution that is satisfactory to each of them. If the parties are able to resolve their dispute through the mediation process, they typically set forth the terms of their agreement in a legally binding writing.

Mediation is widely considered a much more effective and appropriate means than litigation for resolving employment-related disputes. The proceedings are private,

confidential, and flexible. If the dispute is resolved, the resolution is not one that was imposed on the parties but rather is one both parties played a part in designing and to which they both agreed. Often the parties are able to resume an amicable relationship after the resolution is achieved.

Conduct of Mediation

All mediations pursuant to the Program will be conducted by a single mediator supplied by JAMS, an independent provider of dispute resolution services. The mediator will be experienced in resolving disputes involving employment issues.

Making a Request for Mediation

To make a request for mediation of an Employment-Related Claim under the Program, an employee or Credit Suisse First Boston, as the case may be, must submit a written request to the other (to the attention of the employee's Human Resources representative in the case of a request made by an employee) and to JAMS and pay a filing fee of $150 to JAMS. Employees may obtain a copy of the request form from the Human Resources Department.

Time Period for Making Request

A request for mediation under the Program must be filed within six months of the time that the complained of action or actions took place, or during such longer period as is allowed by any statute of limitations applicable to the Employment-Related Claim in question. If an employee or Credit Suisse First Boston does not file a request for mediation within the required period, he or she or it will forfeit any further right to make use of the Program and will be foreclosed from bringing an action in any court on the Employment-Related Claim.


## ***Step Three - Final, Binding Arbitration***

It is Credit Suisse First Boston's expectation that most Employment-Related Claims will be resolved through Step One or Step Two. If, however, an employee or Credit Suisse First Boston has made an effort to resolve such a claim through mediation in accordance with Step Two but the mediation proceedings did not result in a resolution, he or she or it may proceed to Step Three, final and binding arbitration. To elect to proceed to arbitration, the employee or Credit Suisse First Boston must make a request for arbitration in the manner described below. Final, binding arbitration will be an employee's and Credit Suisse First Boston's exclusive remedy for resolving an Employment-Related Claim that was mediated unsuccessfully. Both the employee and Credit Suisse First Boston will be bound by any decision rendered by an arbitrator pursuant to Step Three, whether in respect of a claim asserted by an employee or in respect of a claim asserted by Credit Suisse First Boston, subject to the right to seek judicial review of the decision in accordance with applicable law.

What Final, Binding Arbitration Is

Final, binding arbitration is a process in which a dispute is presented to a neutral third party, the arbitrator, for a final and binding decision. The arbitrator renders a decision after considering the evidence and arguments presented by both parties.

Arbitration is less formal than a court trial and generally is quicker. It is, however, an orderly proceeding, governed by rules of procedure and legal standards of conduct. Each party has the right to at least a minimum amount of discovery, to present his or her proof, through testimony and documentary evidence, and to cross-examine the other party's

witnesses. The arbitrator's decision is legally enforceable. In other words, the party to whom relief is granted may, if the other party does not comply with the terms of the award, sue in court to enforce the award.

<u>Conduct of Arbitration</u>

All arbitrations under the Program will be conducted by a single arbitrator supplied by JAMS, the American Arbitration Association, or the Center for Public Resources (CPR) Institute for Dispute Resolution ("<u>Service Providers</u>"). The arbitrator will be selected, and the arbitration proceeding will be conducted, in accordance with the rules and procedures of such Service Provider applicable to the arbitration of employment disputes (the "<u>Employment Arbitration Rules</u>" of such entity), as such rules and procedures are then in effect. JAMS, the American Arbitration Association, and CPR Institute for Dispute Resolution are all independent, experienced providers of arbitration services. The party that first requests an arbitration will choose which of the three Service Providers will be used for the proceeding. Copies of the three Service Providers' current Employment Arbitration Rules are available from the Human Resources Department.

<u>Making a Request for Arbitration</u>

To make a request for arbitration of an Employment-Related Claim under the Program, an employee or Credit Suisse First Boston, as the case may be, must submit a written request to the other (to the attention of the employee's Human Resources representative in the case of a request made by an employee) and to the Service Provider he or she or it has selected. No filing fee in addition to the filing fee of $150 payment of which was required in order to initiate the mediation of such claim under the Program is required to be paid to commence an arbitration. Employees may obtain a copy of the request form from the Human Resources Department.

<u>Time Period for Making Request</u>

A request for arbitration under the Program must be filed within six months of the time that the complained of action or actions took place, or during such longer period as is allowed by any statute of limitations applicable to the Employment-Related Claim in question. The time that elapses from when a request for mediation is filed pursuant to Step Two of the Program until two weeks after the employee gives Credit Suisse First Boston written notice, or Credit Suisse First Boston gives the employee written notice, that, in such party's view, the mediation proceedings are not likely to result in a resolution will not be counted in calculating the time remaining in the applicable period. If an employee or Credit Suisse First Boston does not file his or her or its request for arbitration within the required period, he or she or it will forfeit any further right to make use of the Program and will be foreclosed from bringing an action in any court with respect to the Employment-Related Claim.


### *Additional Mediation and Arbitration Rules and Procedures*

The following additional rules and procedures will apply to any mediation or arbitration under the Program, whether initiated by an employee or by Credit Suisse First Boston:

1.     <u>Representation by Counsel</u>. An employee as well as Credit Suisse First Boston will have the right to be represented by counsel. Each will be responsible for paying the fees and disbursements of his or her or its own counsel, unless otherwise directed by an arbitrator pursuant to his or her authority referred to in paragraph 6 below.

2.    <u>The Mediator or Arbitrator</u>.  The mediator or arbitrator will be experienced in employment law and will be neutral and impartial.  Any mediator or arbitrator will be selected by agreement of the employee and Credit Suisse First Boston from a panel provided by the mediation or arbitration service.  If the employee and Credit Suisse First Boston cannot agree on a mediator or arbitrator, the service provider will make the selection in accordance with its procedures as then in effect.

3.    <u>Expenses</u>.  There will be various expenses associated with a mediation or arbitration, such as the mediator's or arbitrator's daily fees and travel expenses.  In the case of a proceeding under the Program initiated by an employee, the employee will, as noted above, be responsible for an initial filing fee of $150, payable prior to commencement of Step Two (mediation).  Credit Suisse First Boston will, with the employee's consent, bear all of such expenses of the mediator, or of the arbitrator in any subsequent, related arbitration, that are in excess of the initial filing fee.  Each party will be responsible for the fees and disbursements of his or her or its own counsel and the expenses relating to the production of witnesses or other evidence by him or her or it, subject to the authority of the arbitrator set forth in paragraph 6 below.

4.    <u>Location of a Mediation or Arbitration</u>.  Any mediation or arbitration will be held in the New York City metropolitan area or, at the request of the party initiating the proceeding and with the consent of the other party, in the location of the Credit Suisse First Boston office where the employee applied for a position or works or worked when the complained of action or actions took place.  If a proceeding initiated by an employee in respect of an Employment-Related Claim asserted by him or her takes place other than in the location of the office where the employee applied for a position or works or worked when the complained of action or actions took place, Credit Suisse First Boston will reimburse the reasonable expenses of the employee and any witnesses produced by him or her in an arbitration for their expenses incurred in connection with traveling to the site of the proceeding.

5.    <u>Governing Law</u>.  The law applied by a mediator or arbitrator will be the laws of the State of New York, without regard for the conflicts of laws principles thereof.

6.    <u>Authority of Arbitrator</u>.  In the case of an arbitration, the arbitrator's authority will be limited to the resolution of legal disputes between the employee and Credit Suisse First Boston.  The arbitrator will be bound by and will be required to apply all applicable law, including that relating to the allocation of the burden of proof and remedies (including any award of attorney's fees) for violations of such law, if any, as well as all points of substantive law.  He or she will have no authority either to abridge or to enlarge substantive rights available under existing law.

7.    <u>Arbitrator's Decision in Writing</u>.  The arbitrator will be required to render a written award that identifies the parties, summarizes the issues in controversy, and sets forth the decision of the arbitrator and the factual and legal bases for the decision.

# Exhibit B



**CREDIT** | **FIRST**
**SUISSE** | **BOSTON**

## HUMAN RESOURCES - It's About You
## US Employees Handbook

HR HOME | FORMS | BENEFITS | POLICIES | TRAINING | PERSONAL INFO | HOLIDAYS

### VII.  LEAVING CREDIT SUISSE FIRST BOSTON

#### A.  Resignation

Because employment at Credit Suisse First Boston is at will,
employees have the right to resign from Credit Suisse First Boston at
any time, subject to the notice requirement applicable to certain
employees and set out under "Notice Requirement" below. An
employee who wishes to resign should deliver a resignation letter to
his or her Department Manager, who should immediately inform the
Human Resources Department. The Human Resources Department
will schedule an exit interview with the departing employee.
Employees not subject to the notice requirement described below
are requested to give at least two weeks' notice of resignation.

#### B.  Termination by Credit Suisse First Boston

Because employment at Credit Suisse First Boston is at will, Credit
Suisse First Boston may terminate the employment of any employee
at any time, with or without cause or advance notice, except as
required under "Notice Requirement" below. The Human Resources
Department is responsible for reviewing, approving, and supervising
all involuntary termination actions within the Firm.

#### C.  Notice Requirement

All employees who are at the level of Vice President or Director at
the time of termination and were hired as or promoted to, Vice
President or Director on or after September 1, 1998 are required to
give Credit Suisse First Boston written notice of 30 calendar days
before resigning from the employ of Credit Suisse First Boston
unless the employee was a Director at the time of termination and
was either (a) hired on or after January 1, 2005; or (b) was promoted
to Director on or after January 1, 2006 regardless of date of hire in
which case the employee is required to give written notice of 60
calendar days before resigning from the employ of Credit Suisse
First Boston. All employees who are Managing Directors on, or
become Managing Directors at any time after, January 1, 2005 are
required to give Credit Suisse First Boston written notice of 90
calendar days before resigning from the employ of Credit Suisse
First Boston. These provisions shall apply unless a longer period is
required by applicable contract, agreement or policy. In addition,
awards received under the Credit Suisse Group Master Share Plan
may contain separate obligations. Credit Suisse First Boston will give
all employees covered by this policy written notice of 30 calendar
days before terminating their employment for any reason other than
for cause.

During any notice period (whether notice was given by the employee
or by Credit Suisse First Boston) the employee will continue to be an
employee, will be required to assist Credit Suisse First Boston in the
transition of his or her responsibilities, and will be entitled to continue

to receive base salary and to participate in all benefit plans for which an employee at his or her level is eligible (but not to receive any incentive performance bonus that might otherwise be paid in respect of or during that period). Credit Suisse First Boston may require that the employee not come in to work during the notice period. In no event, however, may the employee perform services for any other employer during the notice period. Credit Suisse First Boston may, at its sole election, shorten the duration of the required notice period. If Credit Suisse First Boston shortens the notice period provided by an employee, Credit Suisse First Boston reserves the right, in its sole discretion, not to pay or provide benefits to the employee for any remaining notice period. If Credit Suisse First Boston shortens the notice period it is required to give to the employee, it will make a payment to the employee equal to the amount of base salary the employee otherwise would have earned during the unexpired notice period.

D.  **Return of Company Property**

A departing employee must return all Firm property in his or her possession, including, but not limited to, identification and access cards; keys; corporate credit cards; personal computers, printers, fax machines, modems, and portable telephones; client files and records; rolodex files and customer and client lists; and memoranda, reports, and other documents, and computer software, disks, and files. Departing employees must also submit an up-to-date accounting of expenses to the Department Manager. Departing sales personnel must provide their Department Manager with a description of pending sales, sales calls, sales leads, etc.

E.  **Safeguarding of Confidential Information after Leaving**

Employees are prohibited from using any of the Firm's confidential and proprietary information for any purpose and from disclosing such information to any person after they leave the Firm. Upon their departure, regardless of the reason therefor, they may be required to sign a statement acknowledging that they understand and will comply with this rule.

F.  **Prohibition on Solicitation of Employees, Consultants, Independent Contractors, Customers and Clients after Leaving**

After termination of employment for any reason, employees who at the time of their termination of employment were at the level of Vice President, Director or Managing Director, are prohibited from:

a.  directly or indirectly soliciting, inducing or encouraging any employee of Credit Suisse First Boston and its parents and affiliates (the "Group"), or any consultant or independent contractor providing services to the Group, to leave the Group or to join or perform services for any other company, or

b.  directly or indirectly soliciting, inducing or encouraging any entity or person who is a customer or client of the Group to cease to engage the services of the Group in order to use the services of any entity or person that competes directly with a material business of the Group, where the identity of such customer or client, or the customer or client's need or desire for or receptiveness to services of a type offered by the Group, is known by the employee as a result of his or her employment with the Group.

For this purpose, termination of employment occurs after expiration of any period of notice given or required to be given prior to

resignation or a termination of employment by Credit Suisse First Boston. This provision shall apply for (i) 60 days after the termination of employment in the case of an employee who was a Managing Director at the time of termination of employment, or was a Director at the time of termination of employment and was either (a) hired on or after January 1, 2005; or (b) promoted to Director on or after January 1, 2006 regardless of date of hire; (ii) 30 days after the termination of employment in the case of an employee who was a Vice President at the time of termination of employment or was a Director at the time of termination of employment and was hired before January 1, 2005 and who became a Director before January 1, 2006, or (iii) in all cases, such longer period as required by applicable contract, agreement or policy. In addition, awards received under the Credit Suisse Group Master Share Plan may contain separate obligations.

G. **Payments by Credit Suisse First Boston**

It is not the policy of Credit Suisse First Boston to make severance payments to individuals whose employment has terminated. Credit Suisse First Boston may, at its sole discretion, enter into a written agreement with an individual whose employment has terminated pursuant to which it agrees to make a payment to the individual.

---

**We Welcome Your Feedback**
The Human Resources Site was last updated 03/18/04
This site is maintained by Web Strategy, Standards & Communications
Copyright © 2005 Credit Suisse First Boston LLC and/or its affiliate companies. All rights reserved.

Update to Notice Requirement and Non-Solicit Provisions for MDs - (R017) - Message (HTML)

File   Edit   View   Insert   Format   Tools   Actions   From   Layout   Help

Message | Certification |

## CREDIT SUISSE FIRST BOSTON

# MESSAGE FROM BRADY DOUGAN

**To:** All US Managing Directors

**Date:** February 21, 2005

### Update to Notice Requirement and Non-Solicit Provisions for MDs

Further to the announcement on December 23, 2004, we would like to provide you with additional details on the change in the existing Notice Requirement and Prohibition on Solicitation of Customers and Clients and Employees After Leaving for MDs.

Following a review of standard market practice among our competitors, CSFB decided to update these policies for MDs. The full text of these revised policies is set out on the tab of this Certification email. You are expected to certify that you have reviewed and acknowledged these policies by **March 15th.**

**A summary of the details follows:**

- MDs will be required to provide the Company with 90 days' written notice of their resignation from the Company.
- MDs will be prohibited from soliciting employees, consultants or independent contractors, as well as customers or clients, of CSFB and its parents and affiliates for 80 days after termination of employment.
- These provisions will apply unless a longer period is required by applicable contract, agreement, policy, law or regulation.
- Finally, awards received under the Credit Suisse Group Master Share Plan may contain separate obligations for MDs.

Once you have reviewed these provisions, you are required to certify that you are familiar with them, that you understand them and that you agree to comply fully with them and to promote compliance with them among your colleagues and those you supervise. You do this by clicking the button at the bottom of the form. You must do this by March 15th. This will act as your signature and will also reflect your understanding of these new policies and agreement to be bound by them.

There will be a follow-up procedure to ensure that Human Resources receives all certifications, and senior management will be notified of the names of those MDs who fail to respond. Please read these new requirements and submit your agreement as soon as possible and no later than **March 15th.**

Brady Dougan

☒ Update to Notice Requirement and Non-Solicit Provisions for MDs - (0017) - Message (HTML)

File  Edit  View  Insert  Format  Tools  Actions  Form  Layout  Help

Message | Certification

## NOTICE REQUIREMENT FOR MANAGING DIRECTORS AS OF JANUARY 1, 2006

All employees at the level of Managing Director on or after January 1, 2006 are required to give CSFB written notice of 90 calendar days before resigning from the employ of CSFB. This provision shall apply unless a longer period is required by applicable contract, agreement, policy, law or regulation. In addition, awards received under the Credit Suisse Group Master Share Plan may contain separate obligations for Managing Directors. CSFB will give Managing Directors written notice of 30 calendar days before terminating their employment for any reason other than for cause or disability (as defined in the Company's long term disability plans applicable to you). During the notice period the employee will continue to be an employee, will be required to assist CSFB in the transition of his or her responsibilities, and will be entitled to continue to receive base salary and to participate in all benefit plans for which an employee at his or her level is eligible (but not to receive any incentive performance bonus that might otherwise be paid in respect of or during that period). CSFB may require that the employee not come in to work during the notice period. In no event, however, may the employee perform services for any other employer during the notice period. CSFB may, at its sole election, shorten the duration of the required notice period. If CSFB shortens the notice period (a) the employee has provided CSFB reserves the right, in its sole discretion, to not pay the employee for any remaining notice period; or (b) CSFB is required to give to the employee, it will make a payment to the employee equal to the amount of base salary the employee's otherwise would have earned during the unexpired notice period.

## PROHIBITION ON SOLICITATION OF CUSTOMERS AND CLIENTS AND EMPLOYEES AFTER LEAVING

## FOR MANAGING DIRECTORS AS OF JANUARY 1, 2005

For 60 days after the termination of their employment, Managing Directors are prohibited from:

(A) directly or indirectly soliciting, inducing or encouraging any employee of CSFB and its parents and affiliates (the "Group"), or any consultant or independent contractor providing services to the Group, to leave the Group or option or perform services for any other company; or

(B) directly or indirectly soliciting, inducing or encouraging any entity or person who is a customer or client of the Group to cease to engage the services of the Group in order to use the services of any entity or person that competes directly with a material business of the Group, where the identity of such customer or client, or the customer or client's need or desire for or receptiveness to services of a type offered by the Group is known by you as a result of your employment with the Group.

For this purpose, termination of employment occurs after expiration of any period of notice given or required to be given prior to resignation or a termination of employment by CSFB. This provision shall apply unless a longer period is required by applicable contract, agreement, policy, law or regulation. In addition, awards received under the Credit Suisse Group Master Share Plan may contain separate obligations for Managing Directors.

I AGREE